**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **EDWARD MEZA,** | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO._____** |
| | ) | |
| **CITY OF PORT ISABEL,** | ) | |
| **JOSE ZAMORA, an Individual,** | ) | |
| **MARTIN CANTU, an Individual,** | ) | |
| *Defendants.* | ) | **JURY REQUESTED** |

<u>**PLAINTIFF'S ORIGINAL COMPLAINT**</u>

COMES NOW Plaintiff, Edward Meza, and files this Original Complaint against Defendants, City of Port Isabel, Juan Jose Zamora, Martin Cantu, Individuals, and in support of his Complaint alleges as follows:

**I. PARTIES**

1.      Plaintiff, Edward Meza (hereinafter "Plaintiff Meza"), is an individual and a resident of Cameron County, Texas who resides at 315 N. Musina Street, Port Isabel, Texas 78578.

2.      Defendant, the City of Port Isabel, (hereinafter "Defendant CPI"), is a Texas home rule municipality, who may be served with service of process by serving either Defendant CPI's Mayor, Juan Jose Zamora or City Secretary, Ms. Susie Alcocer, at 305 E. Maxan Street, Port Isabel, Texas 78578.

3.      Defendant, Juan Jose Zamora, (hereinafter "Commissioner Zamora"), is an individual and a resident of Cameron County, Texas who may be served with service of process at 514 Highway 100, Laguna Heights, Texas 78578, or wherever he may be found.

4.      Defendant Martin Cantu, (hereinafter "Commissioner Cantu"), is an individual and a resident of Cameron County, Texas who may be served with service of process at 106 Jackson Ave. Laguna Heights, Texas 78578, or wherever he may be found.

## II. JURISDICTION AND VENUE

5.      Jurisdiction of this Court is invoked pursuant to 28 USC Sections 451, 1331, 1441, 1443, and 42 USC 1983. In addition, this Court has supplemented jurisdiction under 28 USC 1367 over Plaintiff's factually identical claims arising under State law.

6.      Venue properly lies in this Court because the events giving rise to this suit lies in the District and Division in which suit has been filed.  Further, the employment practices to be alleged and unlawful were and are currently being committed within the Jurisdiction of the United States District Court for the Southern District of Texas, Brownsville Division, and all Individual Defendants are residents of Cameron County, Texas.

## III. FACTS SUPPORTING PLAINTIFF'S CLAIMS

7.      From September 23, 2008 Plaintiff Meza served as City Manager for the home rule municipality of Port Isabel, Texas until May 19, 2015 when he was terminated.[1]

8.      During Plaintiff Meza's tenure as City Manager, there was significant corruption within the City government. Likewise, there were many personal and political vendettas ongoing between various city officials who were jockeying for political power, influence and in some instances, personal monetary gain.  Plaintiff Meza recognized this improper, unethical and often illegal behavior and sought to bring it to a halt.

9.      Important specifically to the eventual termination of Plaintiff Meza from his position as City Manager—which was an act of unabated retaliation for exposing corruption on the part of city officials and an outright violation of his First Amendment free speech rights—were the actions of Commissioners Juan Jose Zamora and Martin Cantu.  Both of these commissioners owned auto repair shops in and around the city of Port Isabel.  On several occasions, Commissioners Zamora and Cantu regularly instruct city departments to route their fleets of vehicles to Zamora and Cantu's

---

[1] Prior to that he served as the City's Director of Historical Preservation since December 3, 1996.

respective repair businesses despite obvious conflicts of interests, the appearance of corruption, and violations of City Ordinances banning commissioners from doing business with the city.

10.     Upon identifying these issues, Plaintiff Meza and then City Attorney, Robert Collins, repeatedly warned Commissioners Zamora and Cantu of their violations of the City's Ordinances. Plaintiff Meza also instructed City department heads to stop sending vehicles to Commissioners Zamora and Cantu's respective auto repair shops citing violation of City Ordinances.  Despite such warnings, Commissioners Zamora and Canto pressured City department heads to ignore Plaintiff Meza's instructions and continued their questionable business practices.

11.     Indeed, Plaintiff Meza was not the only City official aware of Commissioners Zamora and Cantu's unscrupulous practices.  A former commissioner finally accused Commissioners Zamora and Cantu of numerous violations of the City's Ordinances and moved for their dismissal.

12.     Commissioners Zamora and Cantu demanded that Plaintiff Meza remove a vote on their dismissal from the official agenda of the City's upcoming special meeting, but Plaintiff Meza refused.  At a special meeting on April 13, 2015 the City Mayor and two Commissioners voted to remove Commissioners Zamora and Cantu from their positions.

13.     Upon notice of their removal, Commissioners Zamora and Cantu filed suit seeking a Declaratory Judgment on the City's action in removing them from their positions as commissioners. Additionally, Commissioners Zamora and Cantu sought a temporary restraining order / temporary injunction that would allow them to return to their position as Commissioners pending the outcome of their Declaratory Judgment action.  In response to Commissioners Zamora and Cantu's suit, the City filed a Plea to the Jurisdiction which was denied by the court.

14.     Before the judge could sign the temporary injunction requested by Commissioners Zamora and Cantu, the City appealed the court's ruling on the its Plea to the Jurisdiction.  This appeal resulted in a stay/abating of any further ligation pending the appeal.  Therefore, this automatic stay

made Commissioners Zamora and Cantu's request for a temporary injunction moot and, as a result, their removal as commissioners was still in effect. Since they were not "sitting" commissioners, they were effectively precluded from voting on any official City matters. Unfortunately, this fact did not keep Commissioners Zamora and Cantu from continuing to participate and influence City matters as they continued, wrongfully, to retain their positions of office. From this point forward, Commissioners Zamora and Cantu sought to punish Plaintiff Meza for his perceived wrong doings in holding them accountable for their actions.

15.     Prior to the above referenced events, and based upon Plaintiff Meza's many years of dedicated service to Defendant CPI, on July 6, 2010, in a special meeting of the Commissioners of Port Isabel, the Commissioners voted to approve an employment / severance agreement package for Plaintiff Meza. (**EXHIBIT 1:   Minutes of a Special Meeting of the City of Port Isabel Commission**).

16.     On the same day as the meeting, the Commissioners drafted a formal Severance Agreement that was subsequently signed by Joe E. Vega, Mayor of Port Isabel and Plaintiff Meza. (**EXHIBIT 2:  City Manager Severance Agreement**).

17.      The severance agreement, which was to be paid to Plaintiff Meza upon his termination by Defendant CPI—for any reason whatsoever—provided Plaintiff Meza the following: (1) One-year salary at Plaintiff Meza then current salary; (2) Payment of all accrued sick leave; and (4) Payment of all accumulated vacation. *Id.*

18.     Without affording Plaintiff Meza the requisite procedural hearing before termination, Plaintiff Meza was notified that his employment with Defendant CPI had been terminated by the Commissioners at a special meeting held on May 19, 2015. (**EXHIBIT 3:  Minutes of a Special Meeting of the City of Port Isabel Commission**). Upon information and belief, Plaintiff Meza's employment as City Manager was terminated by a vote of three (3) commissioners, specifically Juan

Jose Zamora, Martin Cantu, and a newly elected Jeffrey David Martinez, in retaliation for Plaintiff Meza's exposing various City Charter violations and breaches of law committed by Commissioners Zamora and Cantu who voted to approve Plaintiff Meza's termination. ***Id.***

19.     Furthermore, by terminating Plaintiff Meza's employment in retaliation for speaking out and exposing corruption within the City government— clearly matters of public concern directly related to his right to freedom of speech—Defendants CPI, Zamora and Cantu all violated Plaintiff's Meza's First Amendment Rights.

20.     Adding insult to injury, Plaintiff Meza was further notified that the new City Attorney, Gilberto Hinojosa—who just happened to be the former attorney for Commissioners Zamora and Cantu— declared that the City would not honor his severance agreement with Plaintiff Meza.  Further City Attorney Hinojosa stated that severance packages were illegal in Texas because Texas was an "employment at will" State and that the City Charter also stated that severance packages could not be given to the City Manager. This revelation came as a complete shock to Plaintiff Meza as Defendant CPI had historically always honored severance agreements it had brokered in the past and continued to do so with other City employees even after the Plaintiff's termination.

21.     In addition in the weeks following the termination of Plaintiff Meza, new City Manager Hockema began alleging to the local media and press in and around the City of Port Isabel, that due to Plaintiff Meza's financial mismanagement of certain city projects were the direct cause of the city's budget shortfalls.  Indeed, City Manager Hockema went as far as to allege that the City had incurred a one million-dollar deficit from these allegedly mismanaged city projects at the hands of Plaintiff Meza. All of these statements were false when they were made by City Manager Hockema, but made nonetheless with a reckless disregard to their truthfulness.  To be clear, these comments were made to bring public disgrace upon Plaintiff Meza and were made in an odious attempt to justify Defendant CPI's refusal to pay Plaintiff Meza his promised severance package.

22.     The votes of Commissioners Zamora, and Cantu, to remove Plaintiff Meza from his position as City Manager were not only in retaliation for him exposing their violations of various City ordinances (in violation of Plaintiff Meza's First Amendment rights), but were further improper given the fact that due to the previously referenced court actions, they should not have been voting in any official city meetings.

23.     At a subsequent May 26, 2015 commissioners meeting to discuss possible action to rescind the severance policy of Plaintiff Meza, City Attorney Hinojosa and Commissioners Martinez and Cantu voted over the abstaining votes of Mayor Joe E. Vega and Commissioner Maria de Jesus Garza to rescind the promised severance package of Plaintiff Meza.

24.      Importantly, while Plaintiff Meza's severance package was being discussed by the commissioners, City Attorney Hinojosa was promulgating the media with false statements stating that Plaintiff Meza, in addition to demanding the payment of promised severance package, was making demands for additional severance benefits that would cost tax payers over $150,000.  These statements of City Attorney Hinojosa were false when made, but were made nonetheless with a reckless disregard to their truthfulness.

25.     On June 11, 2015, Plaintiff Meza sent a letter to Mayor, Jose E. Vega, demanding that Defendant CPI honor the terms of their legally binding severance agreement with him. **(EXHIBIT 4:  June 11, 2015 Letter)**.  As instructed by City Attorney Hinojosa, Mayor Vega did not respond to this demand providing any explanation or rationale for Defendant CPI reneging on its obligations per the severance agreement.

26.     Again on June 18, 2015, Plaintiff Meza sent another letter to Mayor Vega demanding Defendant CPI honor the terms of his severance agreement.  **(EXHIBIT 5:  June 18, 2015 Letter)**. Again Mayor Vega did not respond as per instruction by City Attorney Hinojosa. Instead, the new City Manager Jared Hockema emailed Plaintiff Meza a request from City Attorney Hinojosa to meet

with him at his private law practice offices to discuss Plaintiff Meza's letter demanding payment of his promised severance package. Due to the past and above described execrable actions of City Attorney Hinojosa, Plaintiff Meza refused to attend this requested meeting.

27.     To date Defendant CPI has wholly failed to honor the terms of its binding severance agreement with Plaintiff Meza. At the time of the termination of his employment, Plaintiff Meza earned an annual salary of $78,205.00 along with other benefits he no longer receives.

### IV. STATEMENT OF CLAIMS

**Count I: Violations of Plaintiff Meza's First Amendment Rights/Wrongful Discharge**

28.     Paragraphs 1 through 30 are incorporated by reference herein.

29.     As stated above, in exposing the corruption of Commissioners Zamora and Cantu, and the overall level of corruption rampant within Defendant CPI, Plaintiff Meza engaged in speech on matters of public concern directly related to his right to freedom of speech.

30. Defendant CPI denied Plaintiff Meza's right of freedom of speech under the First Amendment to the United States Constitution by retaliating, *i.e.* terminating his employment as City Manager, for exercise of his protection of speech.

31.     Because the actions causing harm to Plaintiff Meza were taken by the direction and approval of Defendant CPI, such acts of retaliation against Plaintiff Meza for his exercise of his First Amendment Rights formed an official policy of Defendant CPI, rendering Defendant CPI to Plaintiff Meza for his actual damages under 42 U.S.C. Section 1983.

**Count II: Breach of Severance Agreement**

32.     Paragraphs 1 through 23 are incorporated by reference herein.

33.     Defendant CPI failed to comply with the terms of the severance agreement it signed and had Plaintiff Meza sign on June 6, 2010.

34.     Plaintiff Meza is entitled to recover the full value of his severance agreement with

Defendant CPI.  This amount totals not less than $78,205.00, based upon the promises made to Plaintiff Meza by Defendant CPI.  Defendant CPI has failed or refused to pay this amount.

35.     It became necessary for Plaintiff Meza to retain the service of counsel file suit to collect the amounts owed to him by Defendant CPI, despite his demands for such amounts on June 10, 2015 and again on June 18, 2015.  These demands by Plaintiff Meza were not met and more than thirty (30) days have elapsed since then.

36.     Defendant CPI has therefore breached its severance agreement with Plaintiff Meza and thus should be obligated to reimburse Plaintiff Meza for all consequential damages, as well as applicable attorneys' fees and prejudgment interest.

## Count III:  Fraud / Fraudulent Inducement

37.     Paragraphs 1 through 30 are incorporated by reference herein.

38.     Pleading further, if further pleading be necessary, and without waiving the foregoing, Plaintiff Meza contends that the Defendant CPI, acting by and through its Mayor and Commissioners, induced Plaintiff Meza to sign the severance agreement of June 6, 2010, without the present intention at the time of performing under the terms of the severance agreement.

39.     Alternatively, and without waiving the foregoing, Plaintiff Meza contends that Defendant CPI, acting through its Mayor and Commissioners, knowingly misrepresented the terms and conditions of the severance agreement which it sought to induce Plaintiff Meza to enter to his detriment.

40.     Plaintiff Meza relied upon such representations to his detriment and such representations were material.

41.     Plaintiff Meza has suffered damages as a result of such wrongful conduct on the part of Defendant CPI in an amount not less than $78,205.00.

## Count IV:  Violations of ERISA

42.     Paragraphs 1 through 30 are incorporated by reference herein.

43.     Pleading further, if further pleading be necessary, and without waving the foregoing, the severance agreement signed by the parties on June 6, 2010, allegedly provides Plaintiff the right to be paid severance pay because of his status as City Manager for Defendant CPI at that time.

44.     However, if it should be determined that the severance agreement at issue is some of some (unknown) "plan," as that term is used in the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), the Plaintiff Meza alternatively contends that he has a cause of action under ERISA and is entitled to recovery of amounts as permitted by such statute on the same basis as set forth above, based upon the representations which are at issue in this case.

45.     Additionally, if Plaintiff Meza is entitled to recover amounts pursuant to any such cause of action, he further seeks recovery of all attorneys' fees and other costs and interest afforded him under such statute.

## Count V:  Individual Liability

46.     Paragraphs 1 through 30 are incorporated by reference.

47.     Individual Defendants Juan Jose Zamora and Martin Cantu, along with others (namely Gilberto Hinojosa, Jeffrey David Martinez and Jared Haddon Hockema) have acted outside the proper course and scope of their official duties as commissioners, officers and representatives for Defendant CPI.

48.     These Individual Defendants conspired to remove Plaintiff Meza from his position as City Manager, and then conspired to deny him his promised severance package were wholly outside City policy, state regulations, and state and federal laws.

49.     These Individual Defendants conspired to remove Plaintiff Meza from his position as City Manager, and then conspiring to deny him his promised severance package was done solely in

retaliation for Plaintiff Meza's exposing the overall level of corruption rampant in the business/official dealings of these Individual Defendants with Defendant CPI.

50.    In exposing this corruption, Plaintiff Meza engaged in speech on matters of public concern directly related to his right to freedom of speech. These Individual Defendants, acting under the color of law of their various political positions within Defendant CPI, denied Plaintiff Meza's right of freedom of speech under the First Amendment to the United States Constitution by retaliating, *i.e.* terminating his employment as City Manager and refusing to honor his promised severance package.  Because the actions causing harm to Plaintiff Meza were taken by the direction and approval of these Individual Defendants acting under the color of law of their various political positions within Defendant CPI, such acts of retaliation against Plaintiff Meza for his exercise of his First Amendment Rights render these Individual Defendants liable to Plaintiff Meza for his actual damages under 42 U.S.C. Section 1983.

## V. DAMAGES

51.    As a proximate and/or producing cause of the above described acts and omissions, Plaintiff Meza has suffered damages in an amount not less than $78,205.00, but rather more.

## VI. PRAYER

Plaintiff Meza  respectfully pray that Defendant CPI and individual Defendants Juan Jose Zamora and Martin Cantu be  cited  to  appear  and  answer  and that Plaintiff Meza have judgment against Defendants, jointly and/or severally, for the following:

      a.  For judgment against Defendants, awarding Plaintiff Meza's actual damages for Defendant, City of Port Isabel's, breach of contract and fraud/fraudulent inducement;

      b.  For judgment against Defendants, awarding Plaintiff Meza prejudgment and post judgment interests as allowed by law;

      c.  For judgment against Defendants, awarding Plaintiff Meza's costs of suit;

d.  For the reasonable attorneys' fees and costs incurred by Plaintiff Meza in prosecuting this action against Defendants; and

e.  Such other and further relief to which Plaintiff Meza may be justly entitled.

## VII. DEMAND FOR JURY TRIAL

Plaintiff Meza demands a jury trial on all issues contained within this Complaint.

## VIII. DESIGNATION OF PLACE FOR TRIAL

Plaintiff Meza designates Brownsville, Texas for the trial of this action.

Respectfully submitted,

THE GOLDBERG LAW OFFICE, PLLC

*/s/ Daniel J Goldberg*
Daniel Goldberg
Federal Bar No.:  866400
TBN:  24052856
2006 Commonwealth Street
Houston, Texas 77006
P: 713-942-0600
F: 713-942-0601
DJG@LawGoldberg.com

**ATTORNEY FOR PLAINTIFF,
EDWARD MEZA**