United States District Court
Southern District of Texas
**ENTERED**
December 05, 2016
David J. Bradley, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **EDWARD MEZA,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. B-16-137** |
| | § | |
| **CITY OF PORT ISABEL, JUAN JOSE** | § | |
| **ZAMORA & MARTIN CANTU,** | § | |
| **Defendants.** | § | |

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On May 13, 2016, Plaintiff Edward Meza ("Meza") filed a complaint against Defendants Port Isabel City Commissioners Juan Jose Zamora ("Zamora") and Martin Cantu ("Cantu") as well as the City of Port Isabel ("City" or "Port Isabel") (collectively, the three are referred to as "Defendants"). Meza filed four overarching claims: First Amendment retaliation; violations of the Employee Retirement Security Income Act ("ERISA"); breach of contract; and fraudulent inducement. Id. The first two allege violations of federal law and the latter two allege violations of state law.

On September 12, 2016, Defendants filed a motion to dismiss, pursuant to FED. R. CIV. P. 12(b)(6). Dkt. No. 13. In that motion, Zamora and Cantu claim qualified immunity as to the First Amendment retaliation claim. Id. Meza then filed a response; and Defendants filed a reply. Dkt. Nos. 21, 23.

After reviewing the record and the relevant case law, the Court recommends that the motion to dismiss be granted. The federal law claims – First Amendment retaliation and ERISA – should be dismissed with prejudice for failing to state a claim upon which relief can be granted. In any event, Zamora and Cantu are entitled to qualified immunity for the First Amendment retaliation claim.

Notwithstanding the absence of any remaining federal claims, the Court could still exercise supplemental jurisdiction over the state law claims. Nevertheless, those claims –

breach of contract and fraudulent inducement – are exclusively based upon state law, for which reason – and in the interest of comity – they should be dismissed without prejudice to refiling in the state courts.

**I. Background**

   **A. Factual Background**

On September 23, 2008, Meza began his tenure as the City Manager for Port Isabel, Texas. Dkt. No. 1, p. 2.  He had previously served as the City's Director of Historical Preservation. Id.

On July 6, 2010, the City Commissioners – all of whom were the same members who served on the commission when it later voted to terminate Meza's employment – approved an employment agreement and severance package for Meza. Dkt. No. 1, p. 3; Dkt. No. 1-2. That agreement provided that "on termination by the City of Meza's employment for any reason whatsoever, the City will make a lump-sum cash severance payment to Meza in the full amount of his then-annual salary." Dkt. No. 1-2, p. 1.  The agreement was signed by the City's mayor. Id, p. 3.

Meza alleges that, at some unspecified time, he discovered "significant corruption within the City government." Dkt. No. 1, p. 2.  As relevant here, Meza alleges that Zamora and Cantu owned automobile repair shops in Port Isabel. Id.  In their capacities as City Commissioners, Zamora and Cantu would "regularly instruct city departments to route their fleets of vehicles" to their repair shops, in spite of the "conflicts of interests, the appearance of corruption, and violations of City Ordinances banning commissioners from doing business with the city." Id., pp. 2-3.

Meza and Robert Collins – the then-City Attorney – "repeatedly warned" Zamora and Cantu that their actions violated City Ordinances. Dkt. No. 1, p. 3. Meza "also instructed City department heads to stop sending vehicles to Commissioners Zamora and Cantu's respective auto repair shops citing violation of City Ordinances." Id.  The complaint alleges that Zamora and Cantu pressured City department heads to continue sending city vehicles to their repair shops. Id.

City Commissioner Guillermo Torres accused Zamora and Cantu of violating the City Ordinances "and moved for their dismissal" from the commission. Dkt. No. 1, p. 3; Dkt. No. 21, p. 4.  Zamora and Cantu "demanded" that Meza remove that motion from the meeting agenda, but he refused. Dkt. No. 1, p. 3.

On April 13, 2015, the City Commission held a "special" meeting. Dkt. No. 21-6. During the portion of the meeting reserved for "comment by City Commission and City Manager," Cantu and Zamora asked Meza and Collins questions about possible malfeasance by Torres. Id.

During that meeting, the City Mayor and two other commissioners voted to remove Zamora and Cantu from the commission, based upon their violation of city ordinances that prohibited commissioners from doing business with the city. Dkt. No. 1, p. 3.  These votes constituted a majority of the commission. Id.  During the meeting, Zamora and Cantu made a motion to have Torres removed from office, but that motion failed. Dkt. No. 21, p. 5.

Zamora and Cantu filed a complaint in state court, seeking a declaratory judgment that the vote to remove them was illegal. Dkt. No. 1, p. 3.  They also sought a temporary restraining order that would allow them to maintain their positions, pending a lawsuit. Id.

In response, the City filed a "plea to the jurisdiction," which is a motion attacking the state court's jurisdiction to hear the case. Dkt. No. 1, p. 4.  That motion was denied by the trial court; the City filed an immediate interlocutory appeal. Id.  At the time that the appeal was filed, the trial court had orally "indicated that it would sign" the motion for a temporary restraining order, but no signed order was ever issued. Dkt. No. 21, p. 6.

Meza asserts that the filing of the appeal "resulted in a stay/abating of any further litigation pending the appeal." Dkt. No. 1, p. 3; Dkt. No. 21, p. 6 (citing TEX. CIV. PRAC. & REM. CODE 51.014(b)).  Because the case was stayed and no restraining order had been issued, Meza asserts that Zamora and Cantu should not have been permitted to sit on the City Commission or vote in the meetings. Id., p. 4.  However, Zamora and Cantu continued to "participate and influence City matters" as they "retain[ed] their positions of office." Id., p. 4.

On May 14, 2015, Zamora and Cantu announced that there was going to be a special meeting of the City Commissioners on May 19, 2015. Dkt. No. 21, p. 7.  The sole agenda item for the meeting was the continued employment of Meza and Collins. Id.

On May 15, 2015, Zamora and Cantu non-suited their state court case. Dkt. No. 21, p. 7.

On May 16, 2015 – a Saturday – Zamora and Cantu "ordered that City employees unlock the doors to City Hall" and "posted a Notice of Special Meeting, which stated that during a closed session, the City Defendants had 'deliberate[d] the appoint, employment, evaluation, reassignment, duties, discipline, or dismissal' of the City Attorney, City Manager, and counsel for the City and that 'action relative to the executive session' had been taken." Dkt. No. 21, p. 7.  It was then announced that Meza's employment had been terminated and that Jared Hockema was to serve as interim city manager. Id.  At the time of his termination, Meza's annual salary was $78,205. Dkt. No. 1, p. 7.

Meza alleges that Zamora and Cantu were not City Commissioners at the time this action was taken because any court order that they remain on the commission was mooted when the state court case was non-suited. Id.  Meza also argues that this action violated the Texas Open Meetings Act.

Zamora and Cantu then filed a motion to re-instate their state court case, which was granted ex parte. Dkt. No. 21, p. 7.

Following the termination vote, the new City Attorney, Gilberto Hinojosa, notified Meza that the City would not be honoring the severance agreement. Dkt. No. 1, p. 5. Hinojosa claimed that, under state law, "severance packages were illegal in Texas because Texas was an 'employment at will' State and that the City Charter also stated that severance packages could not be given to the City Manager." Id.  Meza claims that the City "had historically always honored severance agreements it had brokered in the past and continued to do so with other City employees even after [his] termination." Id.

On May 26, 2015 – ten days after the City Commissioners had terminated Meza's employment – those same City Commissioners voted to rescind the severance contract that they had entered into with Meza in 2010. Dkt. No. 1, p. 6.

Shortly after the termination vote, Meza's replacement as the City Manager – Jared Hockema – "began alleging to the local media and press in and around the City of Port Isabel, that due to Plaintiff Meza's financial mismanagement of certain city projects were the direct cause of the city's budget shortfalls." Dkt. No. 1, p. 5. Hockema further alleged that "the City had incurred a one million-dollar deficit from these allegedly mismanaged city projects." Id. Meza claims that these allegations were false and that Hockema made them "with a reckless disregard to their truthfulness" to "bring public disgrace" on Meza. Id.[1]

On June 11, 2015, Meza sent a letter to the Mayor, Jose E. Vega, demanding payment of his lump sum severance pay, in accordance with the agreement. Dkt. No. 1, p. 6. Vega did not respond. Id.

On June 18, 2015, Meza sent Vega another letter, again demanding the severance payment. Dkt. No. 1, pp. 6-7. Hockema replied to the letter, requesting that Meza meet with Hinojosa at Hinojosa's private law office to discuss the matter. Id. Meza refused to attend that meeting, "due to the past and above described execrable actions of City Attorney Hinojosa." Id.

**B. Procedural History**

On May 13, 2016, Meza filed a complaint against the City, Zamora, and Cantu in the Southern District of Texas, Houston Division. Dkt. No. 1. Zamora and Cantu are sued in their individual capacities. Meza alleges that he was unlawfully retaliated against for exercising his First Amendment rights when he "expos[ed] the corruption of Commissioners Zamora and Cantu, and the overall level of corruption rampant within" the City. Dkt. No. 1, p. 7. He also made a claims against the City for breach of contract, fraudulent inducement

---

[1] The Court notes that Hockema is not a defendant in this case and Meza has not sued him for slander for allegedly making these statements.

and violations of ERISA for the failure to pay his severance.

On June 17, 2016, the case was transferred from the Houston Division to this Court. Dkt. No. 5.

On August 8, 2016, the Defendants filed an answer. Dkt. No. 10.  In that answer, the City raised the affirmative defense of governmental and sovereign immunity, while Zamora and Cantu raised the affirmative defense of qualified immunity. Id.

On September 12, 2016, the Defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted.[2] Dkt. No. 13.  As to the First Amendment retaliation claim, Defendants argue that Meza's speech regarding the putative corruption in Port Isabel was not protected under the First Amendment because it was made pursuant to his official duties as City Manager.  As to the claims for fraudulent inducement, the City argues that such a claim is an intentional tort and the City has sovereign immunity under the Texas Torts Claims Act ("TTCA") for any intentional torts.  As to the ERISA claim, the City asserts that the severance package is not a retirement plan within the meaning of ERISA and that even if it is considered a retirement plan, state and local governments are exempt from ERISA.[3]

---

[2] The motion to dismiss was filed after an answer, thus it was untimely filed. Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam) ("Because a rule 12(b) motion must be filed before responsive pleadings, the appellees' motion was untimely.").  However, an untimely filed Rule 12(b)(6) motion can be treated as a Rule 12(c) motion for judgment on the pleadings. Id.  A motion to dismiss under Rule 12(b)(6) is subject to the same standard as a motion for judgment on the pleadings under Rule 12(c). Great Plains Trust Co. v. Morgan Stanley Dean Witter, 313 F.3d 305, 313 n. 8 (5th Cir. 2002).  The Court will consider the motion to be one for judgment on the pleadings, but will refer to the motions interchangeably.

[3] The City is not seeking dismissal of the breach of contract claim. Dkt. No. 23, p. 15, n. 11.  "Federal courts must address jurisdictional questions whenever they are raised and must consider jurisdiction sua sponte if not raised by the parties." Arena v. Graybar Elec. Co., 669 F.3d 214, 223 (5th Cir. 2012).  Accordingly, the Court will consider dismissing this claim without prejudice if jurisdictional issues are present.  Dismissal without prejudice – so long as the statute of limitations has not expired – is harmless to the plaintiff. Bazrowx v. Scott, 136 F.3d 1053, 1054 (5th Cir. 1998).

On October 21, 2016, Meza timely filed a response to the motion to dismiss. Dkt. No. 21. Meza asserts that his speech was not part of his official duties – and thus, was protected by the First Amendment – because "he had no authority over the City Commissioners, and understood that investigations into these sorts of matters [were] outside his purview as City Manager." Id, p. 3. As to the claim for fraudulent inducement, Meza argues that the claim is not prohibited by the TTCA, because the City was acting in a proprietary role, as opposed to a governmental role, when it entered into the severance agreement. Id. Meza did not make any arguments as to the ERISA claim. As part of his response, Meza attached various documents, including minutes of City Commission meetings, as well as sworn affidavits from Meza, Vega, and City Commissioner Maria de Jesus Garza. Id.

In that response, Meza also argues that the Court should permit him to engage in limited discovery on the issue of qualified immunity. Dkt. No. 21, p. 15. Specifically allowing him to delve into the defendants' email "communications, which will allow the court to determine their motivations and plans." Id.

On October 27, 2016, Defendants filed their reply brief. Dkt. No. 23. They objected to the exhibits that Meza included with his response, asserting that the Court could not look beyond the pleadings when deciding a Rule 12 motion to dismiss. Id.[4] Defendants re-urged their arguments that Meza's speech was not protected by the First Amendment and that the decision to enter into the severance agreement was a governmental function under the TTCA. Id. Defendants also argue that Meza's request for limited discovery should be denied.

---

[4] Defendants are partially correct. In analyzing the motion to dismiss, it is ordinarily true that the Court does not look beyond the pleadings, and only examines the factual allegations contained in the complaint. Behrens v. Pelletier, 516 U.S. 299, 309 (1996). The Court, however, "may refer to matters of public record when deciding a Rule 12(b)(6) motion to dismiss." Ratcliff v. Rainwater, 93 F. App'x 623, 625 (5th Cir. 2004). Accordingly, the Court will consider any documents of public record (city charter, minutes of commission meetings, etc.) when deciding the motion to dismiss. The sworn affidavits do not fall within this category and will not be considered.

## II. Applicable Law

### A. Motion to Dismiss

As previously noted, the Court is considering the Defendants' motion to dismiss to be a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Such a motion is governed by the same standards as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Accordingly, the Court must examine those standards. Great Plains Trust Co., 313 F.3d at 313 n. 8.

"A motion to dismiss under Rule 12(b)(6) tests only the formal sufficiency of the statements of the claims for relief. It is not a procedure for resolving contests about the facts or merits of the case . . . . [T]he Court must take the plaintiffs' allegations as true, view them in a light most favorable to plaintiffs, and draw all inferences in favor of the plaintiffs." Askanase v. Fatjo, 828 F. Supp. 465, 469 (S.D. Tex. 1993) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); Garrett v. Commonwealth Mortgage Corp. of Am., 938 F.2d 591, 593 (5th Cir. 1991)).

The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Consistent with this requirement, "plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." City of Clinton v. Pilgrim's Pride Corp., 632 F.3d 148, 152-53 (5th Cir. 2010). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 589. "[R]egardless of whether the plaintiff is proceeding pro se or is represented by counsel, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." McConathy v. Dr.Pepper/Seven Up Corp., 131 F.3d 558, 561 (5th Cir. 1998).

Whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. Iqbal v. Ashcroft, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id</u>.  It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"<u>Id</u>. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### B. 42 U.S.C. § 1983

As relevant here, 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

<u>Id</u>.

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." <u>Baker v. McCollan</u>, 443 U.S. 137, 144, n. 3 (1979).  To prevail upon a § 1983 claim a plaintiff must establish two elements: (1) a constitutional violation; and (2) that the defendants were legally responsible for the constitutional violation. <u>Johnson v. Dallas Independent School Dist.</u>, 38 F.3d 198, 200 (5th Cir. 1994).

### C. Qualified Immunity

Qualified immunity protects "government officials performing discretionary functions" from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  Qualified immunity is "an immunity from suit rather than a mere defense to liability; . . . it is effectively lost if a case is erroneously permitted to go to trial." <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985).  "'One of the most

9

salient benefits of qualified immunity is protection from pre-trial discovery.'" Zapata v. Melson, 750 F.3d 481, 484-85 (5th Cir. 2014) (quoting Backe v. LeBlanc, 691 F.3d 645, 648 (5th Cir. 2012)).

Qualified immunity is "a defense against an individual capacity lawsuit." Sanders-Burns v. City Of Plano, 594 F.3d 366, 378 (5th Cir. 2010). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011).

If a defendant claims qualified immunity, the burden shifts to the plaintiff to establish the inapplicability of that defense. Kitchen v. Dallas Cty., Tex., 759 F.3d 468, 476 (5th Cir. 2014) (citing Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir. 2008)). To survive a claim of qualified immunity – in a motion to dismiss under FED. R. CIV. P. 12(b)(6) – the plaintiff must have pled "specific facts that, if proved, would overcome the individual defendant's immunity defense; complaints containing conclusory allegations, absent reference to material facts, will not survive motions to dismiss." Geter v. Fortenberry, 849 F.2d 1550, 1553 (5th Cir. 1988); Cobb v. City of Harahan, 516 Fed. App'x. 337, 340 (5th Cir. 2013) (unpubl.) (citing Geter).

The two-part test for qualified immunity requires the Court to determine: (1) whether defendants' actions violated the plaintiff's constitutional rights; and (2) whether those rights were clearly established at the time of the defendant's actions. Pearson v. Callahan, 555 U.S. 223 (2009).

**D. First Amendment**

"The First Amendment prohibits not only direct limits on individual speech but also adverse governmental action against an individual in retaliation for the exercise of protected speech activities." Keenan v. Tejeda, 290 F.3d 252, 258 (5th Cir. 2002).

However, "[w]hen a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." Garcetti v. Ceballos, 547 U.S. 410, 418 (2006). "With respect to restricting the speech of its employees the government as employer

indeed has far broader powers than does the government as sovereign." James v. Texas Collin Cty., 535 F.3d 365, 379 (5th Cir. 2008) (quoting Waters v. Churchill, 511 U.S. 661, (1994)) (internal quotations omitted).

"Employees who make public statements outside the course of performing their official duties retain some possibility of First Amendment protection because that is the kind of activity engaged in by citizens who do not work for the government. The same goes for writing a letter to a local newspaper, or discussing politics with a co-worker." Garcetti, 547 U.S. at 423 (internal citations omitted).

To establish a retaliation claim, a public employee must prove the following elements: "(1) the plaintiff suffered an adverse employment decision, (2) the plaintiff's speech involved a matter of public concern, (3) the plaintiff's interest in speaking outweighed the governmental defendant's interest in promoting efficiency, and (4) the protected speech motivated the defendant's conduct." Juarez v. Aguilar, 666 F.3d 325, 332 (5th Cir. 2011) (quoting Kinney v. Weaver, 367 F.3d 337, 356 (5th Cir. 2004)).

Whether the plaintiff spoke as an employee or citizen, and whether they spoke on a matter of public concern, are questions of law for the Court to determine. Graziosi v. City of Greenville Miss., 775 F.3d 731, 736 (5th Cir. 2015) (citing Davis v. McKinney, 518 F.3d 304, 315 (5th Cir. 2008)). The "critical question" is "whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." Lane v. Franks, 134 S. Ct. 2369, 2379 (2014). "In other words, the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech." Id.

### E. ERISA

Congress enacted ERISA as a statutory scheme "to protect employees' rights to benefits while also encouraging employers to develop employee benefit programs." Martinez v. Schlumberger, Ltd., 338 F.3d 407 (5th Cir. 2003). ERISA applies to any employee benefit plan established or maintained by an employer or an employee organization in commerce or

in any industry or activity affecting commerce. See 29 U.S.C. § 1003(a).

ERISA, by its very terms, does not apply to a "governmental plan." 29 U.S.C. § 1003(b)(1).  A "governmental plan" is defined as "a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof." 29 U.S.C. § 1002(32).

### F. Supplemental Jurisdiction

Section 1331, of title 28 United States Code, provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  Furthermore, 28 U.S.C. § 1367 states that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  "[A] suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution." Louisville & N.R. Co. v. Mottley, 211 U.S. 149, 152 (1908).

A court may decline to exercise supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The "general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed." Parker & Parsley Petroleum Co. v. Dresser Indus., 972 F.2d 580, 585 (5th Cir. 1992)

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Billups v. Retail Merchants Ass'n, Inc., 620 F. App'x 211, 214 (5th Cir. 2015) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350-51 (1988)).

### III. Analysis

Meza has raised four claims to relief in this case: First Amendment retaliation; ERISA; breach of contract; and, fraudulent inducement. Dkt. No. 1. The first two claims arise under federal law and the latter two claims arise solely under state law.

As to the federal claims, Meza has failed to state a claim upon which relief can be granted. Meza was speaking as an employee when he made the speech at issue in this case; accordingly, that speech was not protected by the First Amendment. As to the ERISA claim, governmental entities, such as the City of Port Isabel, are not bound by ERISA. Thus, all of the federal claims should be dismissed.

If all of the federal claims are dismissed, the Court lacks original jurisdiction over the remaining state law claims. Those state law claims should be dismissed without prejudice to refiling in the state courts.

### A. First Amendment Retaliation

Meza alleges that the termination of his employment and the rescission of his severance agreement were in retaliation for his speaking out about the corruption within the City. Meza, however, has failed to plead sufficient facts to support every element of his claim.

As previously noted, Meza must plead facts tending to show that: (1) he suffered an adverse employment action; (2) he spoke on a matter of a public concern; (3) his interest in speaking outweighed the defendants' interests in promoting efficiency and (4) the adverse employment action was motivated by his speech. Juarez v. Aguilar, 666 F.3d at 332.

As to the first element, Meza pled that his employment was terminated by the City. See Jordan v. Ector Cty., 516 F.3d 290, 295 (5th Cir. 2008) ("there is no question that termination of employment qualifies as adverse employment action"). While it is unclear whether Zamora and Cantu lawfully possessed their offices as City Commissioners when the termination took place, it is clear that Meza's employment was terminated and Hockema was appointed to replace him. For those reasons the Court will assume, for present purposes, that

Meza has pled sufficient facts tending to show that his employment was terminated.

Similarly, as to the fourth element, the timeline offered by Meza arguably shows that Meza's speech resulted in his termination.  For that reason, the Court will also assume that his termination was predicated upon his speech.  These assumptions, however, are insufficient to meet all of the elements of a First Amendment Retaliation claim.

Meza has failed to allege facts sufficient to meet the second element, i.e.  he has failed to allege facts that tend to show that he was speaking as a private citizen on a matter of public concern.  Instead, Meza's speech clearly arose from his capacity and duties as the City Manager.

The Port Isabel City Code states that the city manager "shall be the chief administrative and executive officer of the city and shall be responsible to the city commission for the administration of all the affairs of the city." Dkt. No. 21-2, p. 8.  The City Manager is responsible to "keep the city commission advised of the financial condition and future needs of the city and make such recommendations as may seem desirable." Id.

Thus, Meza's position made him the chief administrative officer for the City and made him responsible for "all the affairs of the city." Id.  Instructing department heads to not take vehicles to certain repair shops owned by Zamora and Cantu surely qualifies as part of his duties as the chief administrator.

Furthermore, Meza was responsible to make recommendations to the City Commission regarding the City's financial picture and future.  Recommending to City Commission members that they should not accept possible work on city vehicles would also seem to fall squarely within these duties.

Additionally, Meza alleges that his speech at the City Commission meeting on April 13, 2015, was why he was retaliated against. Dkt. No. 21, p. 5.  The portion of the meeting in which Meza spoke was the portion that was specifically reserved for "comment by the City

Commission and City Manager." Dkt. No. 21-6, p. 2.[5]  It was during this time that Zamora and Cantu accused Torres of being delinquent on his trash bill and property taxes and asked Meza questions about Torres's conduct.  Id.  While the minute entry for this discussion is abbreviated, it is clear from the minutes and Meza's complaint, that Meza's speech was in response to direct questioning by Zamora and Cantu.  To put it a bit differently, the speech happened because two City commissioners questioned the city manager about the legality of the conduct of a third City commissioner during a meeting whose participants were expressly limited to commissioners and the city manager.

According to the City charter, the city manager may be required to perform any duties as "may be required . . . by the city commission," so long as those duties are not inconsistent with the City charter. Dkt. No. 21-2, p. 9.  Answering questions from City commissioners during a meeting may not be explicitly required by the City charter, but it is not prohibited either.  Answering such questions would appear to fit squarely within Meza's job duties.

Meza has argued that "he had no authority over the City Commissioners" and could not investigate them, so the speech at issue was made in a private capacity. Dkt. No. 21, pp. 3, 9-10.  This argument is misplaced.  The Court's focus is not upon what remedies were available for Meza to utilize in response to the alleged corruption.  Instead, the question is whether Meza's speech fell within the purview of his duties.  The speech clearly arose as part of the scope of his duties as city manager. Lane, 134 S. Ct. at 2379.  The fact that Meza was not required to investigate the commissioners does not mean he was acting outside of the course of his job duties. Benes v. Puckett, 602 F. App'x 589, 594 (5th Cir. 2015).

This conclusion is further buttressed by Fifth Circuit caselaw on this issue.  "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Salge v.

---

[5] The Court notes that this portion of the meeting is designated as a time that the City Commissioners and City Manager "may comment on any matter and receive information from staff about the current city position on any matter." Dkt. No. 21-6, p. 2.

Edna Indep. Sch. Dist., 411 F.3d 178, 186 (5th Cir. 2005).  In cases where an employee was found to be acting within their official duties, their speech was either directed internally or was done in a capacity that was clearly associated with their position. See Rogers v. City of Yoakum, No. 16-40003, 2016 WL 4536520, at *2 (5th Cir. Aug. 30, 2016) (police chief was acting pursuant to his official duties when he reported misconduct by the City Attorney to the Texas Rangers); Wilson v. Tregre, 787 F.3d 322, 325 (5th Cir. 2015) (deputy police chief was acting in his official duties when he reported to his supervisors about how a departmental policy could cause possible legal problems); Caleb v. Grier, 598 F. App'x 227, 230 (5th Cir. 2015) (teachers were acting within their official duties when they were questioned by administrators about possible misconduct); Tucker v. Parish, 582 F. App'x 363, 365 (5th Cir. 2014) (probation officer acted within scope of his duties when he reported to supervisors that co-workers were forging government documents); Nixon v. City of Houston, 511 F.3d 494, 498 (5th Cir. 2007) (police officer's statements to the media, in full uniform at the scene of an accident, were within the scope of his duties).

On the other hand, in those cases where the Fifth Circuit found that the employee was acting outside of their official duties and speaking as a citizen, the employee's speech was almost always directed to listeners other than supervisors. See Graziosi v. City of Greenville Miss., 775 F.3d 731, 733 (5th Cir. 2015) (police officer was not acting pursuant to her duties when she posted a statement on her personal Facebook account that was critical of the police chief); Davis v. McKinney, 518 F.3d 304, 313 (5th Cir. 2008) (auditor was not acting pursuant to her duties when she reported misconduct to the FBI and EEOC); Cutler v. Stephen F. Austin State Univ., 767 F.3d 462, 466 (5th Cir. 2014) (head of university art gallery was not acting in scope of his duties when he declined a congressman's invitation to serve as a juror for an art contest in a neighboring city); Cox v. Kaelin, 577 F. App'x 306, 311 (5th Cir. 2014) (deputy sheriff's involvement in a political action committee that opposed the incumbent sheriff's re-election bid was not within the scope of his job duties); Petrie v. Salame, 546 F. App'x 466, 469 (5th Cir. 2013) (police officer was not within the

scope of his duties when he "spoke off-duty and out of uniform to someone outside of his chain of command on a matter of school curriculum"); Haverda v. Hays Cty., 723 F.3d 586, 598 (5th Cir. 2013) (sheriff's employee was not acting in scope of duties when he wrote a letter to the editor in favor of the incumbent's re-election bid); Juarez, 666 F.3d at 336 (school board CFO acted outside of his duties when he spoke to the FBI about possible misconduct).

Meza's actions in this case were taken within the scope of his duties. His speech was either given to the city department heads – his subordinates – or to the city commissioners – his superiors. Meza's comments at the City Commission meeting arose directly from his position as the City Manager and were in response to questions asked by the City commissioners.[6]

Thus, the Court concludes that – as a matter of law – Meza's comments were made within the scope of his position as the City Manager and are not protected by the First Amendment. For that reason, his claim of First Amendment retaliation should be dismissed.

Given this finding, it necessarily follows that Zamora and Cantu are entitled to qualified immunity as to the only claim against them in their individual capacities - the First Amendment Retaliation claim. The first step of any qualified immunity analysis is to determine "whether a statutory or constitutional right would have been violated on the facts alleged." Griggs v. Brewer, No. 16-10221, — F.3d —, —, 2016 WL 6406642, at *2 (5th Cir. Oct. 28, 2016). In instances where the plaintiff's constitutional rights are not violated, the defendants should be granted qualified immunity. See Elizondo v. Parks, 431 F. App'x 299,

---

[6] The Court notes that the commission meeting featured two separate open forum/ comment periods: one for the general public and the other one for city commissioners and the city manager. Dkt. No. 21-6. Had Meza utilized the comment period for the general public to alert city residents to the possible corruption he had uncovered, the analysis of this case might have been different.

Furthermore, if Meza had reported his concerns about the corruption to an outside law enforcement agency (Texas Rangers, FBI, District Attorney's office, etc.), then the analysis of this case would have been different. Juarez, 666 F.3d at 336.

302 (5th Cir. 2011) (defendant was entitled to qualified immunity because plaintiff's speech arose within his job duties).[7]

Furthermore, Meza's motion for limited discovery on the issue of qualified immunity should be denied. The question of whether he was speaking as a citizen or as an employee is a question of law. Graziosi, 775 F.3d at 736. There is no further discovery salient to that question.

**B. ERISA**

Meza's complaint claims that the City's decision to rescind his severance package violated ERISA. This claim is foreclosed as a matter of law.

The Court notes that Meza's response brief does not address the issue of the ERISA claim. Dkt. No. 21. While Meza did not brief the issue, the Court may not consider the motion to dismiss the ERISA claim to be unopposed simply because it was not addressed by Meza. Webb v. Morella, 457 F. App'x 448, 452, n. 4 (5th Cir. 2012). Thus, the Court will address the merits of the claim.

Under federal law, ERISA does not apply to governmental agencies. 29 U.S.C. §§ 1002(32), 1003(b)(1). The Fifth Circuit has concluded that "ERISA is quite clear in exempting pension plans of governmental agencies." Alford v. City of Lubbock, Tex., 664 F.2d 1263, 1271 (5th Cir. 1982). Thus, even if the severance package was considered a pension plan under ERISA, that statute does not apply to the City and cannot form the basis of a valid claim. Accordingly, this claim also should be dismissed.

**C. State Claims and Supplemental Jurisdiction**

As previously noted, the First Amendment retaliation and the ERISA claims were the only federal claims raised in the complaint. The remaining claims are the state law claims

---

[7] Even if Cantu and Zamora actually violated Meza's constitutional rights, they would still be entitled to qualified immunity, because the nature of Meza's rights were not well defined. See Benes v. Puckett, 602 F. App'x 589, 594–95 (5th Cir. 2015) (defendant entitled to qualified immunity when "the case law does not clearly establish" whether the plaintiff was "speaking pursuant to his job duties or as a citizen.").

for breach of contract and fraudulent inducement.

The "general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed." Parker & Parsley Petroleum Co., 972 F.2d at 585.  In determining whether to dismiss those state law claims, the Court must consider issues of comity,  judicial economy, convenience, and fairness. Carnegie-Mellon, 484 U.S. 343, 350-352.  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." Id. at 351.  This is such a case.

### 1. Comity

The overriding consideration in this case is comity, permitting state courts to resolve state law claims.  Regarding the fraudulent inducement claim, the parties disagree about whether the Texas Tort Claims Act bars such a claim. Dkt. Nos. 13, 21, 23.  In the absence of a federal claim or question – or other consideration not presented in the instant case – it seems prudent to leave questions of state law to the courts created to address them.

### 2. Judicial Economy

Furthermore, the issue of judicial economy weighs in favor of remand.  This is not a case that has been pending in federal court for a long period of time; the complaint was filed on May 13, 2016. Dkt. No. 1.  Furthermore, no discovery has taken place; indeed, discovery was barred until the Court resolved the instant motion to dismiss. Dkt. No. 20.  Finally, this is not a case that has lingered for any extended period. See Newport Ltd. v. Sears, Roebuck & Co., 941 F.2d 302, 307 (5th Cir.1991) (Court abused its discretion by remanding case on the eve of trial after four years of litigation, over a hundred depositions and two hundred thousand pages of discovery production); Batiste v. Island Records Inc., 179 F.3d 217, 227-228 (5th Cir. 1999) (Court abused its discretion by remanding case after three years, lengthy discovery and adjudicating multiple summary judgment motions and motions to dismiss). Dismissing the case without prejudice to refiling in state court will not unreasonably undermine judicial economy.

### 3. Fairness

The issue of fairness also weighs in favor of dismissal.  Meza will not be unduly prejudiced by any dismissal.  The statute of limitations in Texas for a breach of contract claim is four years.  See Walker v. Presidium, Inc., 296 S.W.3d 687, 694 (Tex. App. 2009) ("The limitations period for Appellants' breach of contract, fraud, and fraudulent inducement claims is four years.") (citing TEX. CIV. PRAC. & REM. CODE § 16.004).  According to the complaint, Meza's severance agreement was rescinded on May 26, 2015. Dkt. No. 1, p. 6.  Meza's claim for breach of contract accrued on that date. See Smith v. Ferguson, 160 S.W.3d 115, 123 (Tex. App. 2005) ("It is well-settled that a breach of contract claim accrues when the contract is breached.").

There is also no unfairness as it relates to the fraudulent inducement claim.  A fraudulent inducement claim accrues either: (1) when the fraudulent representations are made or (2) when the plaintiff discovers, through the exercise of due diligence, that the representations were fraudulent. Rodessa Operating Co. v. Leverich Liquidation Co., No. 09-13-00241-CV, 2014 WL 172504, at *3 (Tex. App. Jan. 16, 2014), review denied (Oct. 3, 2014).

If the first rule – when the representations were made – is applicable to this case, then Meza's claim was untimely when it was filed in this Court.  According to the complaint, the fraudulent misrepresentations were made on June 6, 2010, when he entered into the agreement.  This would mean that the statute of limitations expired on June 6, 2014, almost one year before he filed suit in this Court.  Thus, dismissing the claim would not additionally prejudice him.

On the other hand, if the second rule – when Meza discovered the fraudulent nature of the representations – is applicable to this case, then the statute of limitations has not yet expired.  Under this theory, Meza did not realize that the City had no intention of living up to the agreement until he was terminated and the Commissioners voted to rescind the agreement.  The agreement was not rescinded until May 26, 2015.  Under that theory, Meza

would have until May 26, 2019, to file his claims in state court.[8]  Thus, under either theory, Meza suffers no additional prejudice.

### 4. Convenience

Dismissing the case will cause only minimal inconvenience.  As previously stated, this case is not far along in its proceedings, so dismissal it will not require issues to be re-litigated.  There is virtually no additional travel to the courthouse for any party, given that the Federal Courthouse and the State Courthouse are across the street from each other.  No party will suffer undue inconvenience as a result of remand.

In sum, all of the factors outlined in <u>Carnegie-Mellon</u> point toward dismissing the state law claims without prejudice to refiling in state court.

## IV. Recommendation

It is recommended that the motion to dismiss filed by Defendants City of Port Isabel, Juan Jose Zamora, and Martin Cantu be granted, as follows:

Plaintiff Edward Meza's claims for: (1) First Amendment retaliation; and (2) violations of ERISA should both be dismissed with prejudice for failure to state a claim upon which relief can be granted, pursuant to FED. R. CIV. P. 12(c).  Furthermore, to the extent otherwise necessary, Zamora and Cantu are both entitled to qualified immunity as to the First Amendment retaliation claim.

Meza's claims for breach of contract and fraudulent inducement are dismissed without prejudice to refiling in state court.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Andrew S. Hanen, United States District Judge. 28 U.S.C. § 636(b)(1) (eff. Dec. 1, 2009).  Failure to timely file objections shall bar the parties from a <u>de novo</u> determination by the District Judge of an issue covered in the report and shall bar the parties from attacking

---

[8] Comity also weighs in favor of a Texas state court deciding which of the two rules to apply, when determining at what point the cause of action arose.

on appeal factual findings accepted or adopted by the district court except upon grounds of plain error or manifest injustice. See § 636(b)(1); Thomas v Arn, 474 U.S. 140, 149 (1985); Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1428-29 (5th Cir. 1996), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

DONE at Brownsville, Texas, on December 5, 2016.

Ronald G. Morgan
United States Magistrate Judge

22